THE DELAWARE AND ATLANTIC RAILROAD COMPANY v. WILLIAM IRICK.

1. An action for the instalments due on the subscriptions to the capital stock of a railroad company, made to commissioners named in the charter, is properly brought in the name of the company after its organization, the contract being with the commissioners, as agents of and for the benefit of the corporation.

2. It is no objection to the recovery of the instalments due on a subscription to the stock of a railroad company that since the subscription the name of the company has been changed, and the length and *termini* of the road materially altered.

3. A stockholder of a company is made a competent witness, if at the trial he transfers his shares by an instrument in writing, although the regulations of the company require that before the transfer is complete, it should be entered on the books of the company.

4. It is no objection to a witness, offered by an insolvent company in support of a money claim, that he is a creditor of the company, and that a recovery would increase the fund out of which he is to be paid.

---

This was an action on the case, brought in the Burlington county Circuit Court, by the defendants in error against the plaintiffs in error, to recover the subscriptions made by Irick to the stock of the plaintiffs, according to their calls. The first count in the declaration was a special count, setting forth the charter of the company, and the supplement to it and the special contract, which was in these words : " And we the subscribers hereby agree to pay to Thomas Black, James Shreve, and Thomas Scattergood five dollars in hand on each share

to our names annexed, and the remaining forty-five dollars, in instalments of five dollars each, when called for agreeably to law by such persons as the stockholders shall direct." This count stated the making of the calls, and that public notice had been given of them, as directed in the charter. To this were added the common counts.

The defendant pleaded the general issue and the statute of limitations.

Upon the trial at the circuit, the plaintiffs proved their act of incorporation, passed February 11, 1833, incorporating them as " the Delaware and Jobstown Railroad and Macadamized Road Company," authorizing them to construct a road from the Delaware to Jobstown ; and the supplement thereto, passed January 20, 1834, changing their name, and authorizing the construction of a road from the Delaware to the Atlantic. These acts, of which the first was declared to be a public act, and the other was not, were both proved by producing Harrison's Compilation, vol. 1. The date of the last was stated in the declaration as January 20, 1834, as in Harrison's Compilation, when it was really passed January 21, 1834. The subscription was proved as laid in the declaration, and the minutes were produced to prove the calls for instalments, some of which differed from the public notices and from the declaration. The plaintiffs offered to prove by parol that the calls were wrongly entered by mistake in the minutes, and that they were made as laid in the declaration. This evidence was objected to and overruled, and a bill of exceptions prayed.

The plaintiffs offered as a witness Thomas Black, who was an original stockholder, and was objected to ; whereupon he did, in open court, execute a transfer of his stock to Craig Moffat, the attorney of the plaintiffs, for one dollar consideration. The validity of this transfer was objected to, because the charter provided that the stock should be transferred in such manner as the company should by their by-laws direct, and no direction had been given, and because the transfer was made for the mere purpose of making him a witness, and was evidently not a real sale and transfer. The court sustained the objection, and the plaintiffs prayed a bill of exceptions.

Delaware and Atlantic Railroad Co. v. William Irick.

The court, on motion of the defendant, ordered the plaintiffs to be nonsuited, on the ground that they had proved no contract with them. To this the plaintiffs excepted.

The argument came up upon the bill of exceptions before Justices NEVIUS and OGDEN.

*Ten Eyck* and *Dayton,* for plaintiffs in error; *Zabriskie* and *Vroom,* for defendant.

*Ten Eyck* and *Dayton,* for plaintiffs in error.

1. The rejection of Black was error; he was competent. He swore that he was disinterested, and the transfer was valid. 1 *Greenl. Ev.* § 429; 11 *Wend. R.* 628.

2. We proved sufficient to entitle us to recover. We proved the charter, the subscription, the calls, and the publication of the calls, and the variation in the date of the supplement only applied to the first count. 9 *John. R.* 217; 11 *Ib.* 98; 14 *Ib.* 238.

3. The contract with commissioners enures to the benefit of the company. The first instalment was to be paid to the commissioners, the others to such persons as stockholders should direct. *Angell & Ames on Corporations* 54, 56, 386, 293–4; 1 *Penn. R.* 115, 500; 13 *Johns.* 38; 5 *Halst.* 323; 5 *Mass.* 491.

*Zabriskie* and *Vroom,* for defendants in error.

1. The company must show their corporate existence under general issue. 2 *Cowen* 778; 2 *Ld. Ray.* 1535; 8 *Johns.* 378; 14 *Ib.* 416.

Their only proof is Harrison's Compilation. The supplement was a private act, of which that book is no evidence. Harrison was only authorized to publish *public* acts, and only those to end of session of 1833. *Harr. Comp.* 441. Again, the act is set forth in declaration as passed January 21, 1834. By Pamphlet Laws, it appears that it was passed January 20. This variance is fatal. 3 *Green* 52, *Meadow Co.* v. *Church;* 1 *Chit. Pl.* 220; *Bac. Abr. Stat. L.* 5; *Cowp.* 474, *Rann* v. *Green.*

2. The plaintiffs could not sue on this contract; the suit should be by the commissioners only—the contract was made with them; it is a special contract *to pay* to them; it is not, in form or substance, a subscription to stock. 11 *John.* 98; 14 *John.* 239; *A. & A. on Cor.* 293; 5 *Mass.* 80 and 491; 10 *Mass.* 326.

3. These were due on demand, and statute of limitations then runs from date of contract. 7 *Halst.* 247; 9 *Johns.* 217.

4. Whole object as well as name of corporation changed by act of 1834, and defendant thereby released. 8 *Mass.* 268.

OGDEN, J., delivered the opinion of the court.

From the view which I have taken of this case, it was necessary to examine and determine only three of the points discussed upon the argument.

1st. Whether the subscriptions for twenty shares of the stock of " the Delaware and Jobstown ' Rail Macadamized Road Company," made by William Irick, on the twenty-seventh day of June, 1835, enured to the benefit of the corporation, so that the payment therefor could be enforced from him in their corporate name.

2d. If so, whether this action is rightly brought in the name of " the Delaware and Atlantic Railroad Company."

3. Whether the judge, before whom the cause was tried in Burlington county, erred in declaring Thomas Black to be an incompetent witness.

On the eleventh of February, 1833, James Newbold and others were constituted, by the legislature of this state, a corporate company, by the name of " the Delaware and Jobstown Rail and Macadamized Road Company," with a capital stock of sixty thousand dollars, divided into shares of fifty dollars each, with liberty to increase the same to two hundred thousand dollars; and they were clothed with powers to construct a rail or macadamized road, from low water mark in the Delaware river, at the mouth of Craft's creek, by a fixed route, for the distance of thirteen miles and thirty links, to a point in the vicinity of New Lisbon.

By the third section of the charter, James Shreve, Thomas

Black, and Jonathan Scattergood were appointed commissioners to open books for receiving subscriptions to the capital stock of the said company, upon terms that they should require five dollars upon each share subscribed for, to be paid to them at the time of subscribing; the residue to be paid in such instalments, and at such times and places, and to such persons, as the president and directors of the company should, upon fixed public notices, from time to time direct.

The commissioners opened the books, and received subscriptions in the following form:

"Jobstown, 6 mo. 27th, 1833.—Subscriptions to the stock of the Delaware and Jobstown Rail or Macadamized way. The commissioners met at the house of Francis B. Warner, in Jobstown, Springfield township, New Jersey, pursuant to public notice recently given: and we, the subscribers, hereby agree to pay to Thomas Black, James Shreve, and Jonathan Scattergood five dollars in hand on each share to our names annexed; and the remaining forty-five dollars, in instalments of five dollars each, when called for agreeably to law by such person as the stockholders shall direct."

To this instrument are written the names of some fifty persons, for various numbers of shares, among which is that of William Irick for twenty shares.

The defendant in error paid five dollars on each share to his name annexed at the time of subscribing. All the capital stock was taken; and on the thirty-first of August, 1833, the company was organized by an election of nine directors, of whom the defendant was one, and the subscription book was handed over by the commissioners to the directors.

Notices for the payment of the remaining forty-five dollars, in sums of five dollars per share at a time, were given by officers of the company. The defendant failed to make payments, and on the twenty-seventh day of March, 1840, an action was brought in the Circuit Court in Burlington county to recover from him the nine unpaid instalments. One of these instalments was made payable, by the public notice, on the twenty-second day of January, 1834, one on the twentieth of March, one on the twenty-fifth of April, one on the second of June,

one on the second of July, one on the first of August, one on the first of September, one on the first of October, and the last on the first of November, 1834.

It was objected, on the argument, that the defendant made no contract with the company; and that if an action will lie against him on his subscription, it should have been brought by the commissioners in their individual names.

This objection cannot prevail. The commissioners were made, by the charter, agents for the corporators. The whole consideration for the promise declared on passed between the defendant and the corporators; nay, *whatever engagement* for the payment of the forty-five dollars was made in the subscription, was *so* made with the stockholders.

They were, by the *engagement*, permitted to name the person to whom the instalments should be paid for their benefit. They have done so through their board of directors, provided that the calls for the payments, or for any of them, were legally made; and an action can be maintained *only* by the corporation, of which those subscribers *thus* became members.

But this suit is before us in the name of "the Delaware and Atlantic Railroad Company." Is the action rightly brought?

On the twenty-first of January, 1834, a supplement to the charter was passed, whereby the company were *authorized* to continue and extend their road to a point on the shore of the Atlantic ocean, between Tuckerton and Barnegat; and for that purpose, to increase their capital above the capital specified in the original act. Commissioners were appointed to receive subscriptions for the new stock, and a time was fixed for the completion of the extension, on pain of forfeiting the powers and privileges granted by the supplemental act.

By the fifth section of the supplement it is enacted, that the said company shall hereafter be known by the name, style, and title of "the Delaware and Atlantic Railroad Company."

If a corporation changes its name, it must sue by its new name on its old contracts. *Ang. & Ames* 386 ; 3 *Burr.* 1866.

The argument of the question, whether a board of directors of a company, or a majority of the corporators, without the

express authority of all, can bind the minority by a supplemental act which would change the character and rights of those corporators, is not applicable to the point now under consideration ; nor need that question be touched in reaching a legal settlement of this part of the case.   We are not dealing with the proposition, whether the defendant is or is not absolved by that supplement from the fulfilment of the contract made by his subscription ; but simply with the question, whether, if the contract is still binding, the new name of the company is properly used in the action to enforce a performance of *that contract.*

The old name could not have been used, because, by the section of the supplement referred to, the company, after the twenty-first of January, 1834, were to be known in law *only* by the new name, independent of the fact, whether or not they subsequently exercised the new powers conferred for extending their works.

If the question of minority rights was fairly up for decision, the fact that this defendant was a director when the supplement was obtained, and that he continued to act as such under the new name, would not be uninfluential in this particular case.

The action, in my judgment, was properly brought in the new name given to the company by the legislature on the twenty-first of January, 1834.

The plaintiffs below produced upon the trial a copy of the compilation of the public laws of this state, arranged and published under the authority of the legislature by Josiah Harrison, esquire, which was competent evidence of the existence of the original charter and of the supplement, and sufficient to sustain those allegations in their declaration.   They also proved their subscription book and the handwriting of the name of this defendant for twenty shares.

They offered Thomas Black as a witness, who was objected to as being incompetent on account of interest, and was rejected.   It appeared upon the trial of *that* issue (to wit, of his interest), that Black was an original stockholder, but that on the day of the trial he had sold and conveyed all his stock, by

a writing under his hand and seal, for the consideration of one dollar, to Mr. Moffat, the attorney for the plaintiffs.

The defendant insisted that the competency of the witness was not thereby restored; that the by-laws of the company prescribed a mode of effecting transfers of stock, which had. not been complied with by Black. · " The objection of interest proceeds upon the presumption that it may bias the mind of the witness; but that presumption is taken away by proof of his having done all in his power to get rid of that interest." 1 *Greenl. on Evidence*, § 429.

By the transfer, produced in evidence and proved, it appeared that Black had vested all his right in the stock to his vendee, and that in the instrument, he had requested the company to consummate the transfer, by making said vendee a legal stockholder, according to their regulations.

The presumption of bias on account of the interest was. removed by the act of the witness, and, as to that objection, he should have been received as competent to testify in the cause.

But it was again objected, that being a creditor of the company to a large amount, he was *hence* incompetent. It did not appear that he had any lien upon the claim set up against this defendant, or that the directors had made any· arrangement with him for his payment out of any sum which might be recovered in this action. He was a creditor at large, standing before the court in the same relation to the plaintiffs as any individual creditor would stand towards an individual debtor. Whatever influence such a position might have upon the mind of a jury in estimating credibility, it cannot destroy competency.

Two defences were made by the pleas, which applied to all the counts of the declaration.

1st. *Non-assumpsit*, to which a *similiter* was added.

2nd. The bar of the statute of limitations, to which it was replied, that " *actio accrevit infra sex annos*," upon which, by a rejoinder, issue was taken.

When the plaintiffs had rested their cause, the judge gave it as his opinion that there was not any evidence which ought to be submitted to the jury, and directed the plaintiffs to be

called, and to suffer judgment of nonsuit; and a judgment of nonsuit was rendered.

That judgment was removed into this court by a writ of error, returnable in *November term*, 1841.

It is apparent, from the paper proofs, that two of the instalments sued for were barred by the statute of limitations; also, that the calls for some of the others were irregular, if not radically defective.

Upon a view of the objections which were interposed to a recovery, it was further contended, by the defendant's counsel, that Mr. Black, by his testimony, could not have established any fact under the pleadings which would have saved a nonsuit: and hence, upon the principle, that if a party has sustained no injury by the rejection of legal evidence such ruling cannot avail on error, it was insisted that this judgment of nonsuit should not be disturbed.

It does not appear upon the case, in any manner, what the plaintiffs proposed to prove by Mr. Black. He had been a commissioner, a stockholder, and the treasurer of the company. He was conversant with the proceedings of the company, and acquainted with its history.

Would it not have been competent for the plaintiffs to have proved by him such acts of the defendant as should have been left to the jury, for them to decide whether the defendant had waived objections against alleged defects in some of the calls for instalments?

It was competent for the plaintiffs to have proved, on the trial of the issue joined upon the second plea, an acknowledgment of the indebtedness by the defendant within six years. Might *they* not have made that proof by the witness who was rejected, if he had been admitted to testify?

The case before us will not sustain a conclusion that nothing could have been legally established by the witness, which would have carried the matter to the jury.

Being of opinion that the court below erred in declaring Thomas Black to be an incompetent witness, and that the error cannot be cured or avoided by the assumption that his

testimony would not have aided the plaintiff's recovery, I think that the judgment should be reversed.

This conclusion renders an opinion unnecessary upon the other points discussed in the argument.

Let the judgment be reversed, and a *venire de novo* be issued. Costs to abide the event of the suit.